UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
NELL HAMILL,

              Plaintiff,

  -against-

THE CITY OF NEW YORK, JOHN DOE (commanding officer of the New York City Police Department 120th Precinct, said name being fictitious and presently unknown), JOHN ROES 1-30 (police officers, said names being fictitious and presently unknown), and JANE DOES 1-30 (police officers, said names being fictitious and presently unknown),

              Defendants.
---------------------------------------------------------X

Case No.:

**COMPLAINT**

*Plaintiff Demands Trial by Jury*

      Plaintiff NELL HAMILL, by her attorneys, SUTTON & SMYTH, LLP, complaining of the defendants herein, upon information and belief alleges as follows:

**PRELIMINARY STATEMENT**

      1.    This is a civil rights action in which plaintiff NELL HAMILL seeks redress for the defendants' violations of her rights as secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution, as well as for various state law torts. Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorneys' fees, and such other and further relief as this Court deems just and proper.

      2.    More specifically, this action arises from two brazen episodes of police misconduct perpetrated by officers of the New York City Police Department ("NYPD"). The first arose from an occurrence where NYPD officers arrested the plaintiff, Nell Hamill, after she had been the victim of a vicious domestic assault.

3. The second occurred when NYPD officers, acting without a warrant or probable cause, broke into plaintiff's apartment. Plaintiff, who was showering prior to the invasion, was dragged onto the street by the officers, and placed naked and handcuffed in a police car. After several humiliating hours, during which the plaintiff remained naked and handcuffed in the back of the police car, she was released without charge.

4. These two shocking occurrences were carried out by members of the 120th Precinct of the NYPD, located in Staten Island, New York. The plaintiff, who is the daughter of journalist Denis Hamill and niece of the late legendary writer Pete Hamill, was targeted by the 120th Precinct as retaliation for Denis Hamill's public criticism of the NYPD and the precinct itself.

5. In redress for the physical and psychological harm suffered by plaintiff, as well as a myriad of violations of her civil rights, the plaintiff demands compensatory and punitive damages against the City of New York, as well as the individual officers who have yet to be identified by name.

**JURISDICTION, VENUE AND PROCEDURAL HISTORY**

6. This action is brought pursuant to 42 U.S.C § 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violations of plaintiff's constitutional and civil rights.

7. This Court has jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. 1367.

8. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

9. The plaintiff timely served a notice of claim upon defendant THE CITY OF NEW YORK.

10. On or about July 15, 2021, plaintiff appeared for a hearing pursuant to N.Y. General Municipal Law § 50-h.

11. Plaintiff's claims were presented to defendant THE CITY OF NEW YORK for adjustment and payment, and the defendant THE CITY OF NEW YORK has neglected and refused adjust and pay same.

## JURY TRIAL DEMANDED

12. Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## THE PARTIES

13. Plaintiff, NELL HAMILL, is a United States citizen of full age and a resident of Kings County, City and State of New York.

14. Defendant THE CITY OF NEW YORK was, and still is, a municipal corporation, existing under and by virtue of the laws of THE CITY OF NEW YORK.

15. Defendant JOHN DOE (Commanding Officer) was the commanding officer or captain or lieutenant of the 120th Precinct and was present on the scene of the March 26, 2021 incident.

16. Defendants JANE DOES 1-30 are police officers of the New York City Police Department and were present on the scene of the March 4, 202 incident and/or the March 26, 2021 incident.

17. Defendants JOHN ROES 1-30 are police officers of the New York City Police Department and were present on the scene of the March 4, 2021 incident and/or the March 26, 2021 incident.

**STATEMENT OF FACTS**

18. The New York City Police Department (NYPD) is a mayoral agency that serves as the law enforcement arm of defendant THE CITY OF NEW YORK.

19. Upon information and belief, the NYPD and more specifically the 120th precinct, engaged in a policy, pattern, and practice of surveillance, monitoring, over-policing, harassment, and retaliation against individuals and those individuals' families that they perceive to have acted negatively towards the NYPD and the 120th precinct in both the public and private spheres.

20. The plaintiff, as the daughter of journalist Dennis Hamill, a well-known critic of the NYPD and the 120th precinct, was subjected to this conduct.

21. The incidents of March 4, 2021 and March 26, 2021, as described more fully below, were carried out as part of the NYPD and the 120th precinct's policy, pattern, and practice as described above.

*March 4, 2021 Incident*

22. On March 4, 2021, between 11:30 a.m. and 12:30 p.m. plaintiff's husband broke into plaintiff's apartment, located at 351 Van Duzer Street, Apartment 7, Staten Island, New York.

23. Plaintiff's husband did not have a key to the apartment and was not supposed to be present inside plaintiff's apartment, given his prior actions of both stalking and abusing plaintiff.

24. After breaking into plaintiff's apartment, via plaintiff's window, her husband began assaulting her and plaintiff was screaming that she was being assaulted as she attempted to call the police.

25. The assault lasted approximately twenty to thirty minutes prior to police involvement.

26. During the course of the assault, plaintiff's husband was strangling and punching her.

27. Plaintiff's husband choked her, suffocating her and causing her to pass out and become unconscious.

28. Upon information and belief, one of plaintiff's neighbors in the apartment directly next door called 911.

29. When plaintiff regained consciousness, she could hear the police coming down the hallway, due to the sound emanating from their walkie talkies.

30. Upon information and belief, while plaintiff was regaining consciousness and in a disoriented state, her husband heard police sirens and ran out of the apartment via an upstairs exit to the roof of the building.

31. Plaintiff was able to get to the door to open it for the police and explained to them that she needed help as she was physically assaulted in her own apartment by her husband, in violation of a restraining order, and that he had escaped through an upstairs exit.

32. Plaintiff provided the officers with her husband's information, showed the officers the marks on her neck, and advised which direction her husband went upon exiting the apartment.

33. Upon information and belief, there were approximately thirty officers outside plaintiff's front door, and none of those officers asked any further questions about plaintiff's husband, the assault or the restraining order, nor did any officer attempt to go after and/or look for plaintiff's husband.

34. Rather, the officers asked plaintiff repeated questions about herself, ignoring the fact that plaintiff had just been assaulted and failing to offer any help at all, so plaintiff went back inside her apartment and closed the door.

35. Moments later, while plaintiff was lawfully present inside her apartment, the officers began banging on plaintiff's door and cursing continuously for approximately twenty minutes.

36. Finally, the officers kicked plaintiff's door off the hinges, entered plaintiff's apartment and placed her under arrest.

37. Plaintiff was handcuffed and did not resist being placed under arrest.

38. The officers did not permit plaintiff to put on shoes or a shirt before removing her from her apartment and bringing her to the 120th Precinct.

39. Plaintiff was placed in a holding cell for about two and a half hours and then was picked up by the detectives from the 60th precinct.

40. The detectives asked to see the body cam of the arresting officers and, after seeing her door kicked off the hinges, advised plaintiff to contact Civilian Complaint Review Board ("CCRB").

41. Plaintiff called the CCRB, and an investigation was opened, which, upon information and belief, is still currently pending.

42. While plaintiff was at the 60th precinct she was photographed, fingerprinted and placed in a cell for approximately twelve hours.

43. Plaintiff was told at the 60th precinct that she was arrested for an I-card for disorderly conduct from almost two years prior.

44. After the twelve hours in the holding cell at the 60th precinct, plaintiff was taken to Central Booking, where she remained for almost an entire day.

45. Plaintiff was subsequently released on her own recognizance following her in-person appearance with a judge after approximately one day in Central Booking.

46. Following one subsequent court appearance, the case against plaintiff was dismissed outright, and no order of protection was issued.

47. Following her release, plaintiff began treating regularly with a psychiatrist/therapist due to the events of March 4, 2021 and its aftermath.

48. Plaintiff also paid to change all her locks due to the failure to issue an order of protection and the police officers' failure to enforce the restraining order as against plaintiff's husband on the date of plaintiff's assault.

49. Additionally, plaintiff had to pay to install a new front door to her apartment after the old door was kicked off by the police on the day of plaintiff's assault.

50. Approximately two weeks later, plaintiff's husband was subsequently arrested because of the incident.

51. Plaintiff also later learned, upon returning from court following her assault and arrest, that while she was downstairs in handcuffs immediately following the assault and arrest, the police searched her apartment without permission.

52. The police search, without plaintiff's permission, probable cause and/or a valid warrant to perform said search, resulted in further expenses that plaintiff had to pay out due to damage to her kitchen drawers that were ripped out and thrown all over the floor.  Further, plaintiff's clothes were taken from her closet and thrown all over the floor. Her couch was also kicked over and her cabinets were ransacked.

### *March 26, 2021 Incident*

53. Thereafter, on March 26, 2021, while plaintiff was lawfully present inside her apartment and in the shower, she began hearing banging at approximately 11:34 a.m.

54. When plaintiff saw approximately thirty officers at her door yet again, she called her domestic violence victim's advocate at the Staten Island District Attorney's Office, as she was afraid of the police screaming at her door given the March 4, 2022 encounter.

55. Plaintiff's advocate advised that the commanding officer was on the scene, plaintiff's building had been evacuated and the entire block had been shut down.

56. Plaintiff was in a towel and the officers were screaming through the door that they were coming in and going to kick the door down.

57. In response, plaintiff asked what they wanted and if she was under arrest, but she did not receive a response.

58. Immediately after, her door was kicked down with incredible force that made a hole in her wall.

59. Plaintiff was then removed from her apartment by the officers, and while being removed, plaintiff's towel dropped, leaving plaintiff completely naked as she was dragged out of her apartment.

60. After being dragged out of her apartment, completely naked, plaintiff was slammed against the wall and put in handcuffs.

61. Although plaintiff did not resist arrest, four male officers took part in restraining and handcuffing plaintiff.

62. All of the officers on the scene were male and they left plaintiff standing naked in her hallway.

63. When plaintiff asked if she was under arrest she was repeatedly told to "shut up".

64. Plaintiff then asked the officers if they could put a towel around her, to which they responded no, and then brought her downstairs and put her into a police cruiser.

65. Once outside, numerous people from the block and neighborhood were present, many videotaping as plaintiff was put in the back seat of the police cruiser with a female officer, completely naked.

66. Plaintiff's mother spoke with the female office via Facetime and inquired as to why her daughter was sitting naked in handcuffs in the back of the police car.

67. The female officer advised plaintiff's mother that plaintiff was not under arrest.

68. While plaintiff was in police custody, a male officer in a white uniform shirt who represented himself to be the commanding officer of the 120th precinct asked plaintiff if she was Denis Hamill's daughter.

69. Plaintiff was not taken anywhere and released from the police car after about two hours of sitting naked and handcuffed in the back of the car with the entire block watching and videotaping the incident.

70. During that entire time, all of plaintiff's and plaintiff's mother's repeated requests to place a towel over plaintiff's naked body or otherwise clothe plaintiff were denied and/or ignored.

71. Plaintiff was finally released from the car, completely naked and without keys or any means of getting back into her building and apartment.

72. During the time plaintiff was being held naked and handcuffed in the back of the police car, she was asked if the police could search her apartment, to which she responded no. Nonetheless, the police searched her apartment anyway.

73. Yet again, plaintiff had to pay to replace her door that was kicked off the hinges and to repair the gaping hole in the wall.

74. Her drawers were all overturned, all her clothes were out of her closet, her couch was upside down, her fridge was left open and her bed was tossed and thrown apart.

75. Plaintiff later came to find out that this incident occurred in an alleged attempt to protect plaintiff and allegedly for plaintiff's safety, based on a tip received from a neighbor that plaintiff's husband, whom plaintiff has a restraining order against, was in the building.

76. However, plaintiff's husband was not in plaintiff's apartment and instead was found in his friend's apartment, which was located in the same building where plaintiff resided.

77. Following both incidents and as a result of the excessive police activity surrounding plaintiff, she received an attorney letter advising that the management company for plaintiff's building demanded that she move out, as the management company and neighbors did not feel safe having plaintiff as a tenant.

78. As a result of both incidents, which included the illegal arrest of plaintiff by the defendants, plaintiff was subjected to a period of false imprisonment, extreme emotional distress, mental anguish, posttraumatic stress disorder, severe public humiliation, and diminished reputation within her community.

## AS AND FOR A FIRST CAUSE OF ACTION

*False Arrest and Illegal Search in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution (as against all defendants)*

79. Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

80. At all times during the vents described above, defendants lacked probable cause to arrest plaintiff.

81. At all times during the events described above defendants acted under color of state law.

82. The acts complained of were carried out by defendants in their capacity as police officers, with all actual and/or apparent authority afforded thereto.

83. The arrest of plaintiff by defendants deprived plaintiff of the right to be free from arrest not based upon probable cause guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

84. As a result of the aforementioned acts of defendants, plaintiff suffered a period of false imprisonment.

85. The searches of plaintiff's home by defendants deprived plaintiff of the right to be free from illegal searches and seizures guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

86. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer psychological and emotional injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to her reputation and her standing within her community.

## AS AND FOR A SECOND CAUSE OF ACTION

*Deprivation of Federal Civil Rights under 42 U.S.C § 1983 (as against all defendants)*

87. Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

88. At the time of plaintiff's detainment on March 26, 2021, there was no credible evidence that plaintiff had committed a crime.

89. All of the aforementioned acts of the Defendant THE CITY OF NEW YORK, and the individual defendants and their agents, servants, and employees, were carried out under the color of state law.

90. All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

91. The acts complained of were carried out by the aforementioned individual unidentified police officers of the NYPD present on the scene, in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

92. The acts complained of were carried out by the aforementioned unidentified individual defendants in their capacities as police officers, pursuant to their customs, usages, practices, procedures, and the rules of the City of New York and the New York CityPolice Department, all under supervision of ranking officers of said department.

93. The individual defendants, and defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally violative conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

94. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer psychological and emotional injuries, violation of her civil rights, emotional

distress, anguish, anxiety, fear, humiliation, loss of freedom, and damage to her reputation and her standing within her community.

## AS AND FOR A THIRD CAUSE OF ACTION

*Failure to Intervene (as against all defendants)*

95. Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

96. Plaintiff avers that the defendants lacked probable cause to initiate criminal charges against her.

97. Plaintiff avers that all charges against her stemming from the criminal action initiated against her were dismissed.

98. Plaintiff avers that at all time relevant to this Complaint defendants had a duty to intervene to stop fellow officers from making an arrest not supported by probable cause.

99. Plaintiff avers that at all times relevant to this Complaint defendants had numerous opportunities to intervene and put a stop to what was obviously an illegal arrest.

100. Plaintiff avers that the defendants failed to intervene and that their failure to act makes them liable for plaintiff's damages stemming from her illegal arrest.

101. Defendant CITY OF NEW YORK is vicariously liable for the individual officers failure to intervene.

102. As a result of the foregoing, plaintiff was caused to suffer physical, psychological and emotional injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, and humiliation.

## AS AND FOR A FOURTH CAUSE OF ACTION

*Negligent Infliction of Emotional Distress (as against all defendants)*

103. Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

104. Defendants negligently caused emotional distress, psychological harm, physical injuries, and damage to plaintiff.

105. The acts and conduct of the defendants were the direct and proximate cause of injury to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the state of New York.

106. As a result of the foregoing, plaintiff was caused to suffer physical, psychological and emotional injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, and humiliation.

## AS AND FOR A FIFTH CAUSE OF ACTION

*Negligent Hiring Training and Supervision (against the City of New York)*

107. Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

108. THE CITY OF NEW YORK has a duty to use reasonable care in the employment, training and supervision of its employees.

109. This includes a duty to investigate and find out whether employees are competent to do work without danger of harm to others, including the plaintiff herein.

110. THE CITY OF NEW YORK knew or should have known that defendants JOHN DOE (commanding officer) and JOHN ROES 1-30, JANE DOES 1-30, present on the scene on the aforesaid dates were incompetent, have a vicious propensity, and/or have a bad disposition.

111. The CITY OF NEW YORK and the NYPD could have easily anticipated the incidents of March 4, 2021 and March 26, 2021.

112. THE CITY OF NEW YORK and the NYPD failed to adequately investigate and correct the disposition and propensity of defendants JOHN DOE (commanding officer), and JOHN ROES 1-30, JANE DOES 1-30, and other unidentified officers of the NYPD present on the scene of the two occurrences.

113. Because of this history, the incidents of March 4, 2021 and March 26, 2021 were a foreseeable consequence of NYPD'S failure to adequately train, reprimand, or re-assign defendants.

114. Because of the CITY OF NEW YORK and the NYPD's failure to take appropriate action, plaintiff has suffered the injuries claimed herein.

## AS AND FOR A SIXTH CAUSE OF ACTION

*Common Law Tort of False Imprisonment (against all defendants)*

115. Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

116. On March 26, 2021, the individual police officer defendants intended to confine the plaintiff.

117. The plaintiff did not consent to this confinement.

118. The plaintiff was conscious of the confinement.

119. The confinement was not otherwise privileged.

120. The defendant CITY OF NEW YORK is vicariously liable for the tort of false imprisonment under the principle of *respondeat superior* and/or other agency principles.

121. As a result of the foregoing, plaintiff was caused to suffer physical, psychological and emotional injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, and humiliation.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### *Common Law Tort of Assault and Battery (against all defendants)*

122.   Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

123.   On March 26, 2021, the individual police defendants acted with the intent to cause plaintiff to fear for her own physical safety and to fear that violent contact was imminent by behaving toward plaintiff in an aggressive manner.

124.   The individual police defendants had the real and apparent ability to carry out their implied and explicit threats of violent contact.

125.   As a result of the actions of the individual police plaintiff defendants became apprehensive and feared for her own physical safety and feared that violent contact was imminent.

126.   On March 26, 2021, the individual police officer defendants made unwanted, violent, physical contact with the plaintiff.

127.   That this physical contact was made without provocation, consent, or legal privilege, and was made with the intent to injure plaintiff.

128.   That plaintiff suffered physical and psychological injuries as a result of this physical contact.

129.   Defendant THE CITY OF NEW YORK are vicariously liable for the actions of the police officer defendants as they were acting within the scope of their employment with defendants, and in furtherance of defendants' business and interests, and with authority, express or implied, vested in him by defendants.

## AS AND FOR AN EIGTH CAUSE OF ACTION

### *Common Law Tort of Intentional Infliction of Emotional Distress (against all defendants)*

130. Plaintiff repeats, reiterates and asserts each and every allegation contained in the previous paragraphs with the same force and effect as if fully set forth herein.

131. The defendants' conduct as described aforesaid was extreme and outrageous.

132. The defendants intended to cause plaintiff severe emotional distress.

133. The defendants recklessly ignored a substantial likelihood of causing plaintiff severe emotional distress.

134. That a direct and proximate result of the defendants conduct as described aforesaid, plaintiff has suffered severe emotional distress, psychological injury, and loss of standing in her community.

**WHEREFORE**, plaintiff demands relief jointly and severally against all of the defendants

a. Compensatory damages;
b. Punitive damages;
c. The convening and empaneling of a jury to consider the merits of the claims herein;
d. Costs and interest and attorney's fees;
e. Such other and further relief as this court may deem appropriate and equitable.

Dated: New York, New York
June 1, 2022

Respectfully submitted,

SUTTON & SMYTH, LLP

_____
Daniel E. Smyth, Esq. (DS4288)
*Attorneys for Plaintiff*
30 Wall Street, 8th Floor
New York, New York 10005
(212) 709-8295